IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOAN WORTHEN                                                                    PLAINTIFF

V.                                    CASE NO. 4:23-cv-1077-JM

CHI ST. VINCENT INFIRMARY                                              DEFENDANT

## ORDER

Plaintiff Joan Worthen, an employee of Chi St. Vincent, paid the filing fee and initiated this *pro se* workplace discrimination case on November 15, 2023. (Doc. 2, 5). She says that she has been subjected both to workplace harassment because of her race (black) and retaliation for reporting the harassment in violation of Title VII of 42 U.S.C. § 2000 *et seq*. (*Id*.). Defendant seeks summary judgment alleging Worthen has not established a *prima facia* claim for either harassment or retaliation. (Doc. 30). Worthen has responded. (Doc. 34). For the reasons identified below, the Court deems the motion well taken, GRANTS Defendant's motion for summary judgment, and DISMISSES this lawsuit.

Before the Court addresses the motion, some housekeeping is in order. In her papers, Worthen expands her claims beyond those exhausted before the EEOC and properly raised in the complaint; therefore, the claims must be narrowed. In an August 28, 2024 Notice and in her response to the summary judgment, Worthen raises new claims of retaliation and argues for the first time that she was denied promotions in 2023 and again in 2024 (since initiating this lawsuit). (Doc. 28, 34). Worthen's Notice (Doc. 28) regarding the summer 2024 denial of a promotion was filed outside of the Court's discovery deadline (Doc. 21) and will not be considered. In any event, neither the failure-to-promote claims nor the additional retaliation claims (Doc. 35) can be

considered because Worthen has not exhausted those claims by raising them first in a charge to the EEOC. *See Williams v. Little Rock Mun. Water Works*, 21F.3d 218, 223 (8th Cir 1994).

Worthen filed her charge of discrimination with the EEOC on March 3, 2023. (Doc. 30-5). That charge is silent with regard to a failure to promote claim. (*Id*.). To preserve that claim or any new claims of retaliation, Worthen must file a new EEOC charge of discrimination. She, however, has not amended her complaint to attach a subsequently filed charge of discrimination raising these allegations. Accordingly, the Court is bound by the claims Worthen exhausted in her March 2023 charge of discrimination. Too, because each discrete claim of discrimination must be brought within 180-days of the discriminatory or retaliatory conduct, Worthen is barred from raising any conduct that occurred before September 4, 2022 (180 days before her 3/3/23 EEOC charge). *See* 42 U.S.C. § 2000e-5(e)(1). Finally, although Worthen makes passing references in her pleadings to a potential FMLA claim (Doc. 2 at 7, 15, 34), she admitted in her deposition testimony that she is not bringing a FMLA claim (Doc. 30-1 at 71). Accordingly, the Court will narrow its review of Worthen's allegations within these parameters.

## I.    Facts

Because Worthen did not oppose the statement of material facts, they are deemed admitted. Local Rule 56.1(c). Accordingly, the relevant facts are these.

Defendant hired Worthen, a black female, on August 9, 2021, to work as an RN Case Manager. (Doc. 30-1 at 8–9, Doc. 30-2 at 1). Case Managers like Worthen report to the Supervisor of Care Coordination, Hayley Mathues. Mathues reports to the Director of Care Coordination. (Doc. 30-2 at 2). There have been three Directors of Care Coordination since Worthen began— Chae Brewer (2/6/22–8/19/23), Donna Parker (8/7/23–2/1/24), and Joanna Malcolm (6/27/24– present). (*Id*.).

As a case manager, Worthen is tasked with reviewing that patients' medical records have been properly entered into Defendants' various computer programs to ensure insurance authorization is obtained for coverage and payment. (Doc. 3 at 1). Case managers send bills and "clinicals" (documentation justifying the medical necessity of procedures and services) to insurance companies. (Doc. 30-1 at 11–12, 29). The work is completed electronically and is very "detail oriented." (*Id*. at 12–13). Mathues is charged with reviewing the case managers' work and providing them feedback to correct any discrepancies in charting. (Doc. 30-3 at 2). Her goal is to educate staff through "constructive feedback." (*Id*.). Worthen has consistently interpreted Mathues feedback as harassing rather than constructive and believes Mathues singled her out; nevertheless, Worthen admits that she does not know how Mathues interacts with the other case managers. (Doc. 30-1 at 43–44, 76).

During her employment, Worthen has always worked Monday-Friday, 7:30 a.m. to 4:30 p.m. and been given regular pay increases (*Id*. at 18). Worthen was hired at $33.51/hour and currently earns $40.86/hour. (*Id*.). On October 18, 2023, Worthen received her first and only corrective action stemming from her failure to "answer the phone or respond to the missed call and voice message" received when she was working an on-call shift. (Doc. 30-1 at 58, 186–87). Worthen admits she had fallen asleep and missed the call. (Doc. 30-1 at 58). Worthen signed the corrective form and received a "final written warning" as a result. (*Id*. at 58, 153). That warning will expire on October 18, 2024. (Doc. 30-2 at 2).

Before receiving the written warning, Worthen contends that tensions existed. She explains that on January 6, 2023, Mathues emailed Worthen to inquire as to why she had not yet completed clinicals on a particular patient. (Doc. 30-1 at 28–29). Worthen explained she did not believe it was necessary because the patient's chart was marked "No NOA" (no notification of admission),

which Worthen believed indicated no clinicals could be sent. (*Id*. at 28–32). Worthen was not disciplined for this oversight and no aspect of her job changed as a result. (*Id*. at 32).

Worthen next says Mathues questioned why she had not sent clinicals on a particular patient on January 12, 2023. (*Id*. at 33). Worthen was able to quickly explain to Mathues that the patient in question was not assigned to her and was the responsibility of another case manager. No discipline resulted. (*Id*. at 33–35).

Following these interactions with Mathues in January 2023, Director Brewer provided Worthen email feedback on charting best practices. (*Id*. at 35–38). The feedback was instructive and not considered discipline. (*Id*. at 38, 41; Doc. 30-2 at 3). Worthen admittedly does not know whether other case managers were similarly counseled on charting. (*Id*. at 40). Nevertheless, Worthen maintains that her coworkers treat one another with respect and get along with one another. (*Id*. at 42).

In February 2023, the Human Resources Department performed an independent fact finding study after Worthen complained that she found Mathues leadership style to be "bullying." (*Id*. at 141). Worthen also filed a charge of discrimination with the EEOC on March 3, 2023. (Doc. 30-5). In that charge, she alleged race-based discrimination and retaliation alleging that Mathues and Brewer bullied her and singled her out because of her race. (*Id*.). She believes that she has been unfairly harassed about her job performance while similarly situated white women were not so harassed.

While her charges were being investigated, Worthen continued working without incident until August 10, 2023, when she emailed Mathues asking to leave early due to a migraine headache. (Doc. 10 at 2, Doc. 30-1 at 51–53). In that email, Mathues outlined the tasks she would complete before she left for the day. (*Id*.). In response, Mathues repeated the tasks she understood

Worthen intended to complete and added, "I understand the remainder of your job duties to be completed today include:   Afternoon clinical, and immediate [discharge planning needs for CVICU." (Doc. 30-1 at 53, 146). Worthen interpreted Mathues' response to require her to complete the additional tasks before she could leave for the day and believed that request to be discriminatory. (*Id*. at 53–55). Mathues, however, explained she was simply verifying which tasks were left to be reassigned once Worthen left for the day (*Id.* 30-3 at 2). Worthen was not disciplined in any way for leaving early nor was she denied sick leave. (*Id*. at 55–56, 147).

In November and December 2023, Mathues and Interim Director Parker both emailed Worthen needing an explanation as to why a case that began with another case manager had been reclassified as "inpatient" by Worthen. (*Id*. at 61–62, 155–57). Worthen reported the inquiries as harassment. (*Id*. at 158–65). Worthen also complained to supervisors that she was asked to work Christmas day alone, while three white case managers were scheduled to work New Years' day. (*Id*. at 62–64; 167). Worthen interpreted all of this as harassment and complained to upper management, who investigated the claims. (*Id*. at 158–67, 172–74, 181–82). Worthen was not disciplined. (*Id*. at 62).

Following her continued complaints to upper management, Defendant had its corporate Human Resources Compliance Department investigate Worthen's claims. (Doc. 30-2 at 3–4). The HR Investigator found Worthen's allegations unsubstantiated and determined that "the Case Management department leaders had been responsive to Worthen's concerns about her workload and assignments . . . ; had sent similar email communications about work-related errors or concerns to white staff members during the same period; and [found] no evidence that Case Management department leaders had discriminated against or harassed Worthen or other staff members on the basis of race." (Doc. 30-2 at 5).

In summary, Worthen admits that she did not know whether Mathues similarly emails other case managers stating, "I don't know about emails to other nurses. I only know about me." (Doc. 30-1 at 44). Worthen could not identify a time when Mathues or anyone in management ever said anything racially offensive or inappropriate. (*Id*. at 47, 80–81). Rather, Worthen explained that she felt Mathues talked to her like she was a child and simply did not care for her tone of voice. (*Id*. at 47).

## II.    Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir. 1987), FED. R. CIV. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts,

showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### III.   Analysis

To succeed on a claim of race discrimination, Worthen must sufficiently allege that: "(1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently." *Philip v. Ford Motor Co.,* 413 F.3d 766, 768 (8th Cir. 2005). Similarly, Title VII protects employees who have reported workplace harassment and discrimination from retaliation. *Warren v. Kemp*, 79 F4th 967, 973 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 1010 (2024). "To establish retaliation under either Title VII . . ., a plaintiff must prove (1) [s]he engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that the engagement in a protected activity is the but-for cause of the adverse employment action." *Id*.

Because Worthen offered no direct evidence of discrimination, her claims will be considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If Worthen establishes a *prima facie* case of discrimination, then the burden shifts to Defendant to show a legitimate, nondiscriminatory reason for its actions. If Defendant satisfies its burden, the burden shifts back to Worthen to show Defendant's proffered reason was pretextual. *McDonnell Douglas*, 411 U.S. at 804. Under this standard, the Court finds that Worthen

has not shown a *prima facie* case of discrimination or harassment. Further, there is no evidence that her censure was retaliatory.

Worthen's discrimination and harassment claims fail on their face as she has not shown that she suffered any adverse employment or that similarly situated white case managers were treated differently. "An adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment." *Cole v. Group Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024)(*citing Muldrow v. St. Louis*, 601 U.S. 346 (2024); *see also* 42 U.S.C. § 2000e-2(a)). Worthen admitted that, since she began working for Defendant, nothing about her work requirements have changed. Her weekly hours have not changed, and her pay has increased yearly. Throughout 2023, Worthen routinely reported to HR her belief that she was being unfairly harassed by her supervisors. That said, Worthen was only disciplined one time in her career with Defendant, when she fell asleep while on call. Worthen freely admitted to falling asleep, not taking the call, and not returning the voicemail. She was issued a violation and signed the warning. Worthen's belief that the warning was overly harsh and deserved, at most, a verbal reprimand holds no water as she has not pointed to a similarly situated white case manager who was treated differently than she for the same violation. For the same reasons, Worthen has not shown the reprimand was issued in retaliation for filing an EEOC charge or seeking redress through HR.

Worthen received a fair amount of feedback on her work product and questions both its relevancy and the motivation behind it. She has not, however, shown that the feedback was motivated by a racial animus or that similarly situated white case managers did not receive the same sort of advice and questioning. *See Anderson v. Durham D&M, LLC*, 606 F.3d 513, 519 (8th Cir. 2010). In fact, nothing in Worthen's deposition testimony or the various email exchanges

attached to the summary judgment support her allegations that she was subjected to unlawful racial discrimination, harassment, or retaliation.

**IV.     Conclusion**

For the reasons stated above, Defendant's motion for summary judgment (Doc. 30) is GRANTED. The case is dismissed with prejudice.

IT IS SO ORDERED this 8th day of October, 2024.

_____
UNITED STATES DISTRICT JUDGE